IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANTHONY FRANK McKINLEY,
# 52198                                                                                            PLAINTIFF

VS.                                                           CIVIL ACTION NO.  3:21-cv-528-DPJ-FKB

DR. WILLIAM BRAZIER, ET AL.                                                          DEFENDANTS

**REPORT AND RECOMMENDATION**

This action is brought pursuant to 42 U.S.C. § 1983 by Anthony Frank McKinley, an inmate incarcerated in the Mississippi Department of Corrections ("MDOC").  Before the Court are several motions filed by the parties.  Plaintiff has filed a Motion for Preliminary Injunction [6].  Defendants Dr. William Brazier and Dr. John Farmer have filed a Motion to Dismiss [29], a Supplemental Motion to Dismiss [44], and Motion for Summary Judgment [66].  Defendants James Miller and Raniece Matthews have filed Motions for Summary Judgment.  *See* [42], [57].  Plaintiff, who is proceeding *in forma pauperis* and *pro se*, has responded to the motions.  *See* [35], [62], [65], [67].[1]  Having considered the filings, the undersigned recommends that Defendants' motions [29], [42], [44], [57], and [66] be granted because Plaintiff failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a).  Plaintiff's motion [6] should be denied as moot.

   I.   CLAIMS

In his original and amended complaints, McKinley alleges that Defendants violated his constitutional rights while he was incarcerated in 2021 with the MDOC at Central Mississippi Correctional Facility ("CMCF"), located in Pearl, Mississippi.  See [1], [12], [15].  Defendants

---

[1] Plaintiff's Response [67] is unsigned and undated.

are doctors at CMCF, Dr. William Brazier and Dr. John Farmer; and two employees of MDOC, Warden James Miller and Raniece Matthews, an investigator with the ARP.

In his original complaint, McKinley alleged that Defendants Brazier and Farmer violated his constitutional right to adequate medical treatment beginning when he arrived at CMCF on July 19, 2021, after undergoing surgery at a nearby hospital, and continuing until August 9, 2021, the date he signed his complaint. [1] at 6, 14. McKinley attached to his complaint an emergency grievance that he filed on August 9, 2021, with the MDOC's Administrative Remedy Program ("ARP") on the claims he alleged in his original complaint.[2] *See* [1] at 8, [1-1] at 1. In his original complaint, McKinley requested only injunctive relief in the form of medications, a transfer to another facility, suspension of the administrative remedy exhaustion rule, and other general relief. [1] at 6, 8.

With leave of Court, Plaintiff has twice amended his complaint. *See* [12], [15]. McKinley asserts that Defendants Miller and Matthews conspired to retaliate against him for filing this action.[3] *See* [12] at 2. He maintains that Miller retaliated against him by reclassifying him for general population. *Id.* at 3. McKinley alleges that when he refused to go to general population, he was placed in lockdown. *Id.* He posits that Matthews, as an ARP investigator, improperly denied him access to the ARP by rejecting his grievances. *Id.* at 4. McKinley blames an unknown case manager supervisor for following Warden Miller's directive by placing him in general population. *Id.* at 4. He also complains that after a surgical follow-up visit at the

---

[2] At the omnibus or *Spears* hearing, McKinley disputed whether the dates on his filings were accurate because he was in "the hole" without access to a calendar when he signed the complaint and his grievance. [48] at 21-22. In any event, the envelope in which he mailed his complaint was stamped as approved legal mail on August 11, 2021, and it was postmarked August 13, 2021. [1-4].
[3] An unnamed case manager supervisor remains unserved. *See* [12] at 2.

hospital and a visit with Dr. Farmer,[4] Defendants Frazier and Farmer refused to give him pain medications prescribed by the hospital and his nutritional support ("Boost" drink) in retaliation for this civil action. *Id.* at 8. McKinley asks for placement in protective custody, appointment of a special master to oversee his care, and suspension of the exhaustion requirement. *Id.* at 6.

In the second amendment to his complaint, Plaintiff claims that he was placed in punitive segregation without due process, and that Miller retaliated against him by allowing an inmate to intercept his legal mail. [15] at 1-2; [48] at 31. He complains of an assault by a fellow prisoner that occurred on September 29, 2021, seven days before he signed his motion to amend. [15] at 4.

At the March 30, 2022 *Spears* hearing, McKinley attempted to articulate a claim based on his fear of being transferred to CMCF for future care. [48] at 13. By that time, Plaintiff had been housed in a different MDOC facility, East Mississippi Correctional Facility ("EMCF"), for over five months. *See* [22], [23] at 1. He admitted at the hearing that he was currently receiving all of his medications, but he asserted that his nutritional support supplement was being stolen by inmates tasked with its delivery. [48] at 10.

II. <u>RELEVANT STANDARDS</u>

Because Defendants Brazier and Farmer have submitted matters outside the pleadings, their motion to dismiss [29] will be characterized as a motion for summary judgment, rather than a motion to dismiss. *Young v. Biggers*, 938 F.2d 565, 568 (5th Cir. 1991). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of

---

[4] Defendants Miller and Matthews have submitted records showing that McKinley was seen by a health care provider on September 30, 2021. [42-2] at 7.

3

fact is genuine if the "'evidence is sufficient to permit a reasonable factfinder to return a verdict for the nonmoving party.'" *Lemoine v. New Horizons Ranch and Center*, 174 F.3d 629, 633 (5th Cir. 1999) (quoting *Colston v. Barnhart*, 146 F.3d 282, 284 (5th Cir.), *cert. denied*, 525 U.S. 1054, (1998)). Issues of fact are material if "a resolution of the issues might affect the outcome of the suit under governing law." *Lemoine*, 174 F.3d at 633. The Court does not, "however, in the absence of any proof, assume the nonmoving [or opposing] party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (emphasis omitted). Moreover, the non-moving party's burden to come forward with "specific facts showing that there is a genuine issue for trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986), is not satisfied by "conclusory allegations" or by "unsubstantiated assertions," or by only a "scintilla" of evidence. *Little*, 37 F.3d at 1075.

III.   DISCUSSION

Statutory law and case law require a prisoner to exhaust administrative remedies, regardless of the relief sought. The relevant portion of 42 U.S.C. § 1997e, as amended by the Prison Litigation Reform Act of 1995 ("PLRA"), states as follows:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)(Supp. 2000). In *Booth v. Churner*, 532 U.S. 731 (2001), the Supreme Court held that 42 U.S.C. § 1997e, revised as a part of the PLRA, requires an inmate to exhaust administrative remedies before bringing an action with respect to prison conditions, regardless of the relief offered through administrative remedies. *Id.* at 740-741. The United States Supreme Court further explained its position when it held that the PLRA's exhaustion requirement is

4

mandatory and applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong. *See Porter v. Nussle*, 534 U.S. 516, 524 (2002)(commenting that federal prisoners suing under *Bivens* must first exhaust administrative remedies); *Jones v. Bock*, 549 U.S. 199 (2007)(reaffirming that exhaustion is mandatory; stating that it is an affirmative defense). The *Booth* court stressed that it would not read "futility or other exceptions into statutory exhaustion requirements when Congress has provided otherwise." *Booth*, 121 S. Ct. at 1825 n.6.

The United States Court of Appeals for the Fifth Circuit has reiterated the principles found in these cases. In *Gonzales v. Seal*, 702 F.3d 785 (5th Cir. 2012), the Fifth Circuit recognized that exhaustion of administrative remedies prior to suit is mandatory, and that district courts have no discretion to stay § 1983 prisoner cases when they are filed before prisoners have exhausted administrative remedies. The Fifth Circuit concluded, as follows:

> District courts have no discretion to excuse a prisoner's failure to properly exhaust the prison grievance process before filing their complaint. It is irrelevant whether exhaustion is achieved during the federal proceeding. Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted.

*Id.* at 788. Moreover, "[i]t is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion." *Walker v. East Miss. Corr. Facility*, Civil Action No. 4:10cv111-LRA, 2013 WL 4833901, at *2 (S.D. Miss. Sept. 11, 2013)(citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)(finding that filing an initial grievance, without more, did not equate to exhaustion)); *see also Tompkins v. Holman*, Civil Action No. 3:12cv87-LRA, 2013 WL 1305580 (S.D. Miss. Mar. 26, 2013)(dismissing § 1983 complaint for failure to exhaust administrative

5

remedies when prisoner filed a grievance, but did not complete the ARP before filing his lawsuit). Courts have consistently held that exhaustion is mandatory, "irrespective of the forms of relief sought and offered through administrative avenues." *Booth v. Churner*, 532 U.S. 731, 739 (2001). Put another way, "[t]he requirement of exhaustion applies regardless of Plaintiff's opinion on the efficacy of the institution's administrative remedy program." *Nealy v. Moore*, Civil Action No. 4:11cv187-HTW-LRA, 2013 WL 6230107, 3 (S.D. Miss. Nov. 30, 2013)(citing *Alexander v. Tippah Co.*, 351 F.3d 626, 630 (5th Cir. 2003)); *see also Smith v. Rhodes*, No. 3:19cv260-DPJ-FKB, 2020 WL 4366090 (S.D. Miss. July 30, 2020)(finding that prisoner failed to exhaust available remedies when he failed to amend rejected grievance that asked for monetary and other relief not allowed by the ARP).

      Defendants have presented authenticated documents from McKinley's ARP file with the MDOC. *See* [42-1] to [42-3]. The documents show that McKinley was transferred to CMCF on July 14, 2021, following surgery at a local hospital. [42-3] at 6. On August 9, 2021, McKinley filed his first request for administrative remedy related to his desire for medications and nutritional support. [42-1] at 3. He labeled the request as an "emergency/sensitive administrative remedy" and stated that he was "under imminent danger of serious physical injury." *Id.* His request for administrative remedy was received by the Inmate Legal Assistance Program on August 11, 2021. *Id.* The Administrative Remedy Program ("ARP") Director, R. Pennington, received the request on August 13, 2021. *Id.* That same day, August 13, 2021, the ARP Director issued McKinley two separate letters. In the first letter, Pennington concluded that McKinley's request did not meet the criteria for emergency review and advised him that he had five days from receipt of the letter to file the request as a non-emergency request for

6

administrative remedy. *Id.* at 2. The second letter addressed the "sensitive issue" aspect of McKinley's request for administrative remedy and concluded that his request did not meet the criteria for treatment as a "sensitive" issue. *Id.* at 5. The letter advised McKinley of further steps to take if he wished to pursue the grievance through regular channels. *Id.*

Thereafter, McKinley resubmitted a request for administrative remedy on the denial of his chronic care medications. *See* [42-2] at 6. The claim was initially backlogged on October 7, 2021. *Id.* at 4-5. The request was accepted into the ARP on October 20, 2021 and assigned remedy number CMCF-21-1223. *Id.* at 2. The program issued a First Step Response in CMCF-21-1223 on October 25, 2021, and no further appeals are in the record. *Id.* at 1, 7.

McKinley signed and dated his initial complaint in this action on August 9, 2021, the same date he submitted his initial request for administrative remedy regarding medical claims. [1] at 14.[5] His cover letter to the Clerk of Court is dated August 10, 2021. [1-2]. The envelope in which he mailed his complaint shows that it was received as "CMCF Approved Legal Mail" on August 11, 2021 and bears a postmark of August 13, 2021. [1-4]. In two different places in his complaint, McKinley acknowledged that he had not exhausted his administrative remedies prior to filing this action because he asked for suspension of the "administrative remedy exhaustion rule" as a form of relief. [1] at 6, 8.

He has since filed two amendments to his complaint. *See* [12], [15]. In those amendments, Plaintiff alleged claims of retaliation against all Defendants, mail tampering, assault by a fellow inmate, and punitive segregation. The record contains no exhausted requests for administrative remedies based on these claims.

---

[5] Plaintiff's motion to proceed *in forma pauperis* is also signed August 9, 2021. [2] at 2.

7

As the undisputed records demonstrate, McKinley filed this action before he exhausted his administrative remedies. He signed his initial complaint on August 9, 2021, while he was in the process of pursuing grievances with the ARP.[6] His complaint, furthermore, demonstrates that he was aware of the exhaustion requirement because he asked for suspension of the exhaustion rules as a form of relief. [1] at 8. His argument that he is excused from exhaustion because the Director of the ARP failed to respond within 72 hours to his emergency or sensitive issue request for administrative remedy is without any basis in the standard operating procedure that Plaintiff cites, *see* [62-4] at 5-6, or the MDOC's Inmate Handbook. *See* http://www.mdoc.ms.gov/Inmate-Info/Documents/CHAPTER_VIII.pdf (last visited July 27, 2022); *see also* Fed. R. Evid. 201(b)(2)("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). Even so, the records show that Director Pennington responded by authoring two letters to McKinley's request on the same day as he received it, August 13, 2021. And, in any event, Plaintiff's arguments regarding Pennington's response time are irrelevant because McKinley failed to exhaust his administrative remedies before filing this action. "Pre-filing exhaustion is mandatory, and the case must be dismissed if available administrative remedies were not exhausted." *Gonzales*, 702 F.3d. at 788.

The same logic applies to the additional claims McKinley asserted in his amendments at [12] and [15], each signed and dated within days of the events about which he complains. [12-2] at 4-5; [15] at 2-6. There is no evidence in the record that Plaintiff completed administrative remedies before filing the multiple claims asserted in these amendments, such as retaliation, mail

---

[6] It may be reasonably inferred that a prisoner delivered his petition to the prison officials for mailing on the date he signed it. *See United States v. O'Kaine*, 971 F. Supp. 1479, 1480 (S.D. Ga. 1997).

tampering, punitive segregation without due process, classification issues, and failure to protect him from assault by another inmate. *See* [57-4]; [57-5]. Once again, McKinley asked that the rules regarding exhaustion be suspended, indicating that he understood the exhaustion requirement. [12] at 6. Accordingly, these claims should be dismissed based on Plaintiff's failure to exhaust administrative remedies.

Moreover, McKinley's requests for declaratory and injunctive relief should be dismissed because he is no longer incarcerated at CMCF, where his claims originated. *Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001); *see also Guillory v. Hodge*, No. 2:14-cv-157-MTP, 2016 WL 1175282, at *2 (S.D. Miss. Mar. 23, 2016)(citing *Oliver v. Scott*, 276 F.3d 736, 741 (5th Cir. 2002))("The transfer of an inmate from an allegedly offending institution generally renders his claims for injunctive relief moot.").

McKinley limited his claims in his initial complaint and his first amendment to declaratory and injunctive relief. [1] at 8; [12] at 6-8. In his second amendment, he asked for sanctions against defendants, but focused primarily on declaratory and injunctive relief. *Compare* [15] at 3 *with* [15] at 5-6. Plaintiff was transferred from CMCF to EMCF on or about October 20, 2021. [42-3] at 6. Accordingly, his claims for declaratory and injunctive relief are rendered moot. *Herman*, 238 F.3d at 665. And, likewise, any suggestion by McKinley that his claims for declaratory and injunctive relief are not moot based on the possibility that he may be transferred back to CMCF is "too speculative to warrant relief." *Id.*; *see also Coleman v. Lincoln Parish Det. Ctr.*, 858 F.3d 307 (5th Cir. 2017)(finding that the possibility of plaintiff's transfer back to the original detention facility was too speculative to warrant relief)(citing *Herman*, 238 F.3d at 665).

IV.     CONCLUSION

Accordingly, for the reasons discussed in this Report and Recommendation, the undersigned recommends that the Motion to Dismiss [29] and Motions for Summary Judgment [42], [44], [57], and [66] be granted. Accordingly, Plaintiff's claims against all Defendants should be dismissed based on his failure to exhaust administrative remedies. It follows that Plaintiff's Motion for Preliminary Injunction [6] should be denied.

The parties are hereby notified that failure to file written objections to the proposed findings, conclusions, and recommendation contained within this report and recommendation within fourteen (14) days after being served with a copy[7] shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions accepted by the district court. 28 U.S.C. § 636; Fed. R. Civ. P. 72(b); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

RESPECTFULLY SUBMITTED, this the 2nd day of August, 2022.

/s/ F. Keith Ball                               .
UNITED STATES MAGISTRATE JUDGE

---

[7] Where a document is served by mail, the party is considered to have been served on the date the document is mailed by the Court. *See* Fed. R. Civ. P. 5(b)(2)(C).